SARAH P. ROEMER, APPELLANT, V. JAMES MALY, M.D.,
APPELLEE.

539 N.W.2d 40

Filed November 3, 1995.   No. S-93-926.

E. Terry Sibbernsen and Mandy L. Strigenz, of E. Terry
Sibbernsen, P.C., for appellant.

Mark J. Blazek and Mark A. Christensen, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, and GERRARD, JJ.

WHITE, C.J.

This appeal arises from the refusal of the Lancaster County District Court to reinstate Sarah P. Roemer's medical malpractice action against her physician, James Maly, M.D. Roemer sued Maly on September 13, 1990, for injuries ostensibly caused by Maly when he performed surgery on Roemer; the details underlying Roemer's action are not material to her appeal.

Roemer's petition and praecipe were signed by Steven Renteria, attorney and employee of the then partnership of Welsh & Sibbernsen. All subsequent documents filed for Roemer were signed by E. Terry Sibbernsen of Welsh & Sibbernsen. The last document filed for Roemer, a motion to compel, was filed on April 5, 1991; the last of the four depositions taken by Roemer was taken on June 12, 1991. That deposition marked the last evidence of Roemer's interest in her lawsuit while her case remained on the docket.

In the meantime, Maly filed a motion to compel discovery on May 30, 1991, and appeared at the hearing on the motion on June 28. Neither Roemer nor her attorneys appeared at this hearing. The district court granted both Maly's motion and his request for sanctions. Still Roemer did not comply with the discovery order. Neither Maly, Maly's counsel, nor the district court heard from Roemer or her attorneys again in 1991.

In October 1991, the partnership of Welsh & Sibbernsen dissolved, and Sibbernsen moved his practice to a different Omaha location. Renteria did not accompany Sibbernsen to the new office, but stayed behind with Sibbernsen's former partner at the old location until March 1992, when he moved to a different office. Neither Sibbernsen nor Renteria notified the court of any change of address for Roemer's counsel. For that matter, neither Sibbernsen nor Renteria advised the court at any time of the dissolution or of which attorney would thereafter handle Roemer's case. By virtue of signing the initial pleading

in Roemer's case, Renteria constituted Roemer's sole attorney of record, and neither Renteria nor Sibbernsen ever advised the court to the contrary.

In May 1992, the clerk of the Lancaster County District Court noted a lack of activity in Roemer's case over the many preceding months. Standard court practice instructs the clerk to mail notice to attorneys of record in languishing cases of an order to show cause why their cases should not be dismissed for want of prosecution; in this case, Renteria was the attorney of record listed on the docket sheet. The clerk mailed a show cause notice to Renteria at the address listed on the docket sheet (which was the only address ever listed in any court documents for either Renteria or Sibbernsen) on May 12, 1992, ordering him to show cause by June 11. Notice of the show cause hearing was also published in The Daily Reporter on May 29. Neither Roemer, Renteria, nor Sibbernsen appeared at the show cause hearing, and the court dismissed Roemer's case for want of prosecution on June 12. A notice of that judgment was mailed to Renteria on that date.

Not until October 22, 1992—the next term of the court—did the clerk hear from anyone connected with Roemer's case. On that date, Sibbernsen called the clerk and was informed that the district court had dismissed Roemer's case 5 months earlier. Sibbernsen moved to reinstate the case and filed affidavits in support of that motion from himself, Renteria, and James Welsh, his former partner at Welsh & Sibbernsen. All affiants insisted that they had never received either the show cause notice or the notice of judgment dismissing Roemer's case. Unpersuaded, the court refused to reinstate the case.

It is from that ruling that Roemer and her assorted counsel appeal to this court. Roemer argues that the district court abused its discretion in not reinstating Roemer's case pursuant to Neb. Rev. Stat. § 25-2001 (Reissue 1989). She further contends that the district court erred in not reinstating her case by invoking its inherent powers of equity.

A litigant seeking vacation or modification of a judgment after term may take one of two routes: The litigant may proceed either under § 25-2001 or under the district court's independent equity jurisdiction. *Welch v. Welch*, 246 Neb. 435, 519 N.W.2d

262 (1994). This court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion. *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993).

Under the auspice of § 25-2001(3), a district court may vacate or modify its own judgment after the term in which that judgment was rendered if the moving party can show "mistake, neglect, or omission of the clerk, or irregularity in obtaining a judgment or order." Roemer claims that her misfortune stems from the clerk's "mistake" in sending the show cause notice to the former address of Welsh & Sibbernsen, an address at which neither Sibbernsen nor Renteria practiced in May 1992. Roemer concedes that the clerk was not at fault, but argues that any mistake, irrespective of fault, should trigger § 25-2001(3).

This argument ignores our precedent on the issue of "mistake" versus "fault." In *Aetna Cas. & Surety Co. v. Dickinson*, 216 Neb. 660, 345 N.W.2d 8 (1984), an unsuccessful attempt to vacate a default judgment, we held that a district court has no authority to set aside a judgment after the term when any mistake, inadvertence, or neglect was the party's own. The purpose of § 25-2001(3) is to address mishaps beyond a party's control. *Aetna Cas. & Surety Co., supra*. The mistakes that occurred in the present case are not addressed, and therefore are not redeemed, by this section.

Roemer next attempts to trigger § 25-2001(3) by asserting that an irregularity occurred in obtaining the judgment or order. Her argument seems to be predicated on the notion that because a notice is sent for the purpose that it be received, that purpose is frustrated—and an "irregularity" occurs—when the notice is not received and cause is not shown.

The operative definition of "irregularity" in our precedent, however, limits the term to " '[t]he doing or not doing that, in the conduct of a suit at law, which, conformably with the practice of the court, ought or ought not to be done. . . .' " (Emphasis omitted.) *Haen v. Haen*, 210 Neb. 380, 382, 314 N.W.2d 276, 277 (1982). A judgment marred by irregularity is one rendered contrary to the course of law and practice of the court. *Haen, supra*. An example of irregularity under these circumstances would be dismissal for want of prosecution

entered without any opportunity to show cause, not failure of counsel to take notice of opportunity given in accordance with court rules. The record reveals no deviation by the clerk from the standard practice of the district court of sending notice to counsel of record and publishing notice in The Daily Reporter.

As with Roemer's accusation of "mistake," the only irregularity that occurred in this case has nothing to do with § 25-2001(3). See *Bowen v. Rohnacher*, 15 Md. App. 280, 290 A.2d 560 (1972) (holding that nonreceipt of notice of hearing is not irregularity when notice is sent in precise accord with requirements of court rules). In rejecting Roemer's redefinitions of the terms in § 25-2001(3), the district court did not abuse its discretion. This assignment of error fails.

In her second assignment of error, Roemer contends that the district court should have invoked its inherent powers of equity to reinstate her case. Roemer correctly notes that § 25-2001 is not her exclusive remedy for vacating a judgment after the term has expired, because that statute is concurrent with an independent equity jurisdiction and with a court's inherent powers of equity. See *Emry v. American Honda Motor Co.*, 214 Neb. 435, 334 N.W.2d 786 (1983).

For that matter, however, trial courts possess equally inherent power, equally independent of any statute or rule of court, to dismiss a case for failure to prosecute with due diligence. *Schaeffer v. Hunter*, 200 Neb. 221, 263 N.W.2d 102 (1978). Courts can and should invoke this sanction to prevent undue delays in the disposition of pending cases and to stave off congestion from their trial dockets. *Id.* In this case, neither was actual argument presented nor reason clear from the pleadings and documents on file to convince the district court that this case was doing anything more than stagnating on its docket.

Any litigant who seeks equity must herself do equity. *Campbell v. Ohio National Life Ins. Co.*, 161 Neb. 653, 74 N.W.2d 546 (1956). Yet, in the name of equity, this court is presented with a plea for deliverance by an appellant who failed to give notice of substituted counsel; who failed to notify the court of counsel's address changes; who failed to check the local legal newspaper for scheduled hearings in her case; who

failed to comply with an order compelling discovery; who failed to inquire into the status of her case until fully 5 months after its dismissal; who, even at the hearing on her motion to reinstate, failed to present evidence indicating any merit to her claim such that the district court might be persuaded of equities at stake; and who now asks this court to reinstate an action against Maly who denies liability and has awaited finality—albeit without resolution—for 5 years, as of the date of this decision. Although the circumstances do not rise to the level of coming to court with unclean hands (i.e., intentional misconduct), Roemer's hands are not so clean that her request should trump the power of the court to control its docket. Equity follows the diligent, not the negligent. *Abels v. Bennett*, 158 Neb. 699, 64 N.W.2d 481 (1954).

We are aware that the statute of limitations in Roemer's cause of action has long since run. The fact of an expired statute, however, does not in and of itself demonstrate an abuse of discretion in dismissing a case. *Schaeffer, supra*. Other factors present, which are traditionally considered in a decision to reinstate a case, counsel in favor of affirming the district court. No reason for delay was given (and, in fact, Roemer denies any excessive delay), and no previous dismissals were entered in this case only because Roemer did not take the opportunity to keep her case on the docket (and eligible for future dismissals) when dismissal first became a possibility. See *id*.

Roemer argues that "[i]t is unrealistic to expect this Appellant or any other party to a lawsuit to be aware of statutory deadlines and dismissal provisions." Brief for appellant at 12. This contention is simply untrue. Roemer was represented by capable counsel. This court has repeatedly held that notice to the counsel of record constitutes notice to the party represented by such counsel. *Emry, supra*. Regardless of whether represented by counsel, the plaintiff—not the court, not opposing counsel—bears responsibility to prosecute the case with reasonable diligence. See *Schaeffer, supra*. A litigant has a duty to follow the progress of the case, rather than to merely assume that counsel is doing everything necessary and proper. *City National Bank v. Langley*, 161 Ill. App. 3d 266, 514 N.E.2d 508 (1987). See, also, *Minkin v. Levander*, 186 Cal.

App. 3d 64, 230 Cal. Rptr. 592 (1986) (holding that specific duty to keep track of calendar and pertinent dates crucial to maintenance of lawsuit is central to plaintiff's general duty to expedite resolution of plaintiff's case).

The pattern of delay refutes the claim that equity demands reinstatement of the lawsuit. Finding no abuse of discretion by the district court, we affirm the decision to dismiss and deny reinstatement.

AFFIRMED.

WRIGHT and CONNOLLY, JJ., not participating.